**FOR PLAINTIFF**
Christopher Nuneviller, Esq.
*cnuneviller@mnbmeridian.com*
MNB Meridian Law, Ltd.
1650 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
Main: (215) 268-3003
Facsimile: (267) 392-2024

Receipt number AUSFCC-9508333

# In the United States Court of Federal Claims

| | | |
|---|---|---|
| Llewelyn Evan Hughes IV | : | Case No.: **24-625 C** |
| *Plaintiff* | : | |
| V. | : | Judge _____ |
| United States of America | : | |
| *Defendant* | : | **COMPLAINT** |

## COMPLAINT

**PLAINTIFF,** Llewelyn Evan Hughes, IV ("Plaintiff"), by and through his undersigned counsel, MNB Meridian Law, Ltd., and Christopher Nuneviller, Esquire, brings this Complaint against the United States of America, and alleges as follows:

### I.   NATURE OF THE ACTION

1. This lawsuit is about whether Defendant, acting through is appointees, officers, agents, and employees arbitrarily and capriciously abused its discretion, without a compelling government interest or substantial evidence; through the continuing incompetence of Defendant's appointees, officers, agents, and employees deliberately and in bad faith delayed and prohibited Plaintiff from

promotion, receiving awards, promotions, schooling, and other professional development, thereby adversely affecting the otherwise natural progression of his military career, and thereby the loss of more than $1,000,00 in military basic pay, entitlements, benefits, and retired pay over the course of his lifetime.

2.      This lawsuit is about whether Defendant, acting through is appointees, officers, agents, and employees arbitrarily and capriciously abused its discretion, and without a compelling government interest or substantial evidence, improperly investigated Plaintiff for crimes Defendants knew or should have known Plaintiff did not commit, and then failed to close the case for more than 6 years despite clear and convincing evidence and probable cause (as Defendants reluctantly and belatedly admitted in December 2022) to believe Plaintiff did not commit the misconduct alleged.

## II.     PARTIES

3.      The Plaintiff is a prior enlisted and now retired Army National Guard First Lieutenant and a resident of the Commonwealth of Virginia.

4.      The United States is an appropriate party because relief sought hereinafter is solely against the United States.

5.      Christine Wormuth is the Senate Confirmed Secretary of the Army and an officer of the United States. The Secretary of the Army, subject to the authority, direction, and control of the Secretary of Defense, is responsible for, has the authority necessary, and actively supervises and conducts all affairs of the Department of the Army, including the following functions (as are relevant to this matter): recruiting, organizing, training, mobilizing, demobilizing, and administering the Department of the Army, and such other duties as prescribed in Title 10, United States Code, §7013 (10 U.S.C. § 7013).

### III.  JURISDICTION AND VENUE

6. Plaintiff has not filed any other actions in any courts of law regarding the subject of this action.

7. The Court has jurisdiction pursuant to the Fifth Amendment of the United States Constitution, Title 5 U.S.C. § 706 (the "Administrative Procedures Act"); Title 28 U.S.C. § 491 (the "Tucker Act'); Title 28 U.S.C. §§ 1491, 2501; Title 34 U.S.C. § 204 (the "Military Pay Act"); and Title 5, U.S.C. § 504 (the "Equal Access to Justice Act").

8. In accordance with 28 U.S.C. section 2501, this action is brought within six years of May 26, 2023, decision of the Army Board for the Corrections of Military Records.

9. In accordance with 28 U.S.C. section 2501, this action is brought within six years of January 24, 2024, when the Department of the Army arbitrarily and capriciously abused its discretion, without a compelling government interest or substantial evidence, denied Plaintiff's promotion to Captain four times, despite twice previously selecting Plaintiff for promotion; and, failed to execute the directions of the Army Board for the Corrections of Military Records and to which Defendants where obligated to execute.

10. In accordance with 28 U.S.C. section 2501, this action is brought within six years of December 1, 2022, when Army Criminal Investigation Command ("Army CID") closed its September 15, 2015, investigation stating:

> "A subsequent review of this investigation by a CID Headquarters Review Team and Headquarters Council [*sic*] Office determined there was no probable cause to believe that one Lt. Hughes had committed a crime because there was a misunderstanding of the contract requirements and the implementation procedures at the time of the initial work on this investigation, and that _an administrative error occurred in the application of the credible information standard_ of DoD instructions 5505.07. In the initial titling of him. Therefore, he is being deleted from the title block of this report." (emphasis added)

11. In accordance with 28 U.S.C. section 2501, this action is brought within six years of December 1, 2022, when Army Criminal Investigation Command ("Army CID") closed its September 15, 2015, and failed to direct the removal of Plaintiff's name from the United States' civilian arrest record databases.

## IV. STATEMENT OF THE FACTS

### A. Background

12. Beginning in 2005 and continuing until approximately February 2012, more than 100,000 Army Soldiers were employed as contract Recruiting Assistants by Document and Packaging Brokers, Inc. ("Docupak"), pursuant to a 2005 contract awarded by the United States government to develop and operate the Guard Recruiting Assistance Program ("G-RAP").

13. Plaintiff was employed with Docupak on a part-time basis as a contract recruiting assistant when not on active military orders (in an MDAY status), beginning in 2010 and continuing until 2015, during which Plaintiff identified and facilitated the recruitment of six individuals for which Plaintiff received approximately $9,000 in pay or bonuses under the terms and conditions of G-RAP.

14. Beginning in 2007, the Department of Defense and Department of the Army became aware of fraud in the G-RAP program but failed to report the allegations and information to the National Guard Bureau for further investigation.

15. In early 2012 – five years after Defendants' officers, employees, and agents became aware of the fraud, the Secretary of the Army suspended G-RAP based on an Army Audit Agency audit

indicating the 2005 G-RAP contract had been illegally awarded, preliminarily identifying more than $9,000,000 in fraudulent payments.

16.     In February 2014, Army CID assigned more than 200 Army Reserve criminal investigation agents to investigate as many as 100,000 G-RAP recruiting assistants, recipients, and other involved parties.

17.     Over the period 2016 and continuing until 2024, the criminal conduct of Docupak, the Army's incompetence in the investigation, and failed prosecutions of the fraud committed by Docupak and others have been well documented in the press and thoroughly investigated by the Department of Defense, the Department of the Army, the Office of Management and Budget, and the United States Congress.

### B.     G-RAP Investigation of Plaintiff

18.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

19.     On or about September 11, 2015, Plaintiff was identified to Army CID as a recruiting assistant suspected of submitting false claims and making false statements in violation of Title 18 U.S.C. § 287 (false claims), 1001 (false statements). Prior to interviewing witnesses, collecting any evidence, or conducting an investigation, Arsmy CID entered ("Titled" or "Indexed") Plaintiff's name in the title block of a report of investigation ("ROI") (0016-2015-CID692-007383-8C3/5M7). As a result of this titling, Plaintiff's name was transferred to the Department of Justice for inclusion in the National Instant Crime Background Check System ("NICS") where a civilian "arrest" record was created, and currently remains.

20.     Over the period October 2015 and continuing until approximately November 2016, Army CID conducted a faulty, error filled and incompetent investigation of the unfounded allegations against Plaintiff.

21. On October 13, 2015, Plaintiff was interviewed by Army CID via teleconference and fully cooperated with the investigation, providing substantive relevant documents to show Plaintiff complied with the policy requirements of G-RAP and did not submit a false claim or make a false statement.  Plaintiff never heard from Army CID again.

22. In January 2016, the Department of the Army, through Plaintiff's chain of command, demanded that Plaintiff repay approximately $2,000 in pay or bonuses Plaintiff received due to his participation in G-RAP. In exchange for the repayment, Plaintiff was informed that "once the money was returned he could conclude this issue, remove his current flag, and proceed toward promotion." Plaintiff was given no explanation, legal basis, or other context as to why he had to return the G-RAP payment, much less only $2,000 versus the $9,000. Plaintiff responded on January 20, 2016, and declined the offer stating that his actions while working for Docupak were lawful.

23. On September 21, 2016, Army CID briefed the United States Attorney's Office, District of Vermont, who declined to pursue prosecution. In addition, Army National Guard Staff Judge Advocate for the State of Vermont nor the U.S. Army Legal Services Agency, Procurement Fraud Branch, declined to pursue criminal or administrative action. Plaintiff's military commanders ordered that no criminal or adverse administrative action be taken against Plaintiff, and allegedly lifted the adverse administrative flag on Plaintiff's military record. However, the flag was not, in fact, lifted.

24. As a result of Plaintiff's response to the Army's demand to repay only $2,000 of $9,000 in pay and bonuses that Plaintiff correctly received due to his participation in G-RAP, and the decision on behalf of Plaintiff's military commanders not to pursue criminal or adverse administrative action, on or about November 3, 2016, an Army CID judge advocate of the 701st

Military Police Group (CID) (the military contingent of Army CID) in Quantico, Virginia, made a legally incorrect decision that probable cause existed to believe Plaintiff committed violations of Title 18 U.S.C. § 287, 1001, thereby creating a form of unlawful administrative punishment by permitting the titling and the creation of the collateral civilian arrest record to remain in NICS.

25. On November 14, 2016, Army CID closed its investigation but did not inform Plaintiff it closed the investigation.

26. On December 1, 2022, pursuant to a reevaluation of the G-RAP investigation, *sua sponte*, Army CID issued a supplemental statement to its September 15, 2015, report of investigation (0016-2015-CID692-007383-8C3/5M7) of Plaintiff's alleged misconduct G-RAP stating:

> "A subsequent review of this investigation by a CID Headquarters Review Team and Headquarters Council [*sic*] Office determined there was no probable cause to believe that one Lt. Hughes had committed a crime because there was a misunderstanding of the contract requirements and the implementation procedures at the time of the initial work on this investigation, and that <u>an administrative error occurred in the application of the credible information standard</u> of DoD instructions 5505.07 in the initial titling of him. Therefore, he is being deleted from the title block of this report." (emphasis added)

27. As of the date of this complaint, the Titling information has not yet been removed from Defense Criminal Investigation Index and the National Crime Instant Background Check System, and Plaintiff remains falsely "arrested."

    **C. Army Promotion, Promotion Review, Army Board for the Correction of Military Records, and Special Selection Board.**

28. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

29. After serving on active duty with the Regular Army, Plaintiff enlisted in the Army National Guard for the State of Vermont in April 2002, and after receiving his baccalaureate degree was commissioned a Second Lieutenant in May 2009.

30. Plaintiff was appointed to First Lieutenant on October 15, 2011, and first became eligible for promotion to Captain in 2014.

31. Pursuant to Army Regulation 135-155 (AR 135-155) establishing the eligibility criteria for selection for promotion and pursuant to the instructions established in Military Personnel Message (MILPER) 14-213, on December 2, 2014, Plaintiff's military personnel record was considered by the FY15 Army National Guard Selection Board, and selected for promotion to Captain.

32. On March 24, 2015, subsequent to a post board screen of Plaintiff's records, and without notice to Plaintiff for more than two years, the Army moved to remove Plaintiff's name from the FY15 promotion scroll due to the adverse administrative flag initiated as a result of investigation into his involvement in G-RAP.

33. Due to the adverse information flag and pending a decision of the Secretary of the Army pursuant to the FY15 promotion review board, Plaintiff was not considered for promotion to Captain by the FY16 promotion selection board.

34. Beginning in early 2016 and continuing through May 2017, Plaintiff inquired of his immediate chain of command, the Vermont Army National Guard ("VT ARNG"), the National Guard Bureau ("NGB"), and Army Human Resources Command ("AHRC") as to the status of his promotion; however, no Army official was able or willing to provide Plaintiff a status.

35. On May 4, 2017 – two years after the Army moved to remove Plaintiff's name from the FY15 promotion scroll, and pursuant to a verbal statement by AHRC that his promotion was being reconsidered, Plaintiff submitted, *sua sponte*, an ardent rebuttal to (as yet unseen) recommendation to remove him from the promotion scroll detailing Army CID's actions and incompetence in its investigation of Plaintiff.

36. Due to the adverse information flag and pending a decision of the Secretary of the Army pursuant to the FY15 promotion review board, Plaintiff was not considered for promotion to Captain by the FY17 promotion selection board.

37. Three years after his selection for promotion to Captain, on July 17, 2018, the Secretary of the Army removed Plaintiff from the FY15 promotion scroll.

38. Due to the adverse information flag and pending a decision of the Secretary of the Army pursuant to the FY15 promotion review board, Plaintiff was not considered for promotion to Captain by the FY18 promotion selection board.

39. Pursuant to AR 135-155 and pursuant to the instructions established in MILPER 19-047, on April 29, 2019, and purportedly due to the Secretary of the Army's removal of Plaintiff from the FY15 promotion scroll, Plaintiff's military personnel record was considered by the FY19 Army National Guard Selection Board, and selected for promotion to Captain.

40. Given AHRC's removal from the FY15 Captain promotion scroll, Army CID's continuing incompetence and inability to resolve its investigation of Plaintiff; Plaintiff's titling; the continuing adverse information flag on Plaintiff's military record; having reached 20 years of qualifying service for retirement; having no opportunity for further training or advancement; and, being informed that he was ineligible for promotion to Captain by the FY19 promotion selection board due to still being flagged, on August 1, 2019, Plaintiff submitted his request to be transferred to the Retired Reserve.

41. Plaintiff's request to retire was granted on October 1, 2019.

42. On or about January 19, 2023, Plaintiff applied to the Army Board for the Correction of Military Records ("ABMCR") (docket number AR20230001289) requesting his record be reconsidered for promotion to Captain from the FY15 Captain Promotion Selection Board; be

awarded back pay and allowances; and, all derogatory information from his official military personnel file be removed.

43.     On or about March 20, 2023, the Office of the Army Deputy Chief of Staff, G-1, provided an advisory opinion confirming that Plaintiff had suffered an injustice in Plaintiff's indexing and titling by Army CID, and the lengthy processing delays of his nomination, combined with a subsequent decision by a CID documenting the titling and indexing was erroneous, created an injustice. Importantly they noted, Plaintiff was selected for promotion in FY19, but due to his forced retirement, but incorrectly concluded he was not eligible for promotion due solely to his approved retirement.

44.     Insofar as Plaintiff had an approved retirement, Plaintiff still would not have been promoted to Captain. In 2019, Plaintiff's military records still contained an adverse information flag that would have triggered another promotion review board. Plaintiff's retirement forestalled a post board adverse information screening that would have, again, revealed Plaintiff was still under investigation and titled for G-RAP allegations.

45.     On or about March 28, 2023, a panel of the ABCMR unanimously recommended (a) Plaintiff be reconsidered for promotion to Captain based on the FY16, 17, and 18 year criteria; and (b) if selected that his records be corrected to show he met all the eligibility criteria for promotion (e.g., being assigned to a CPT's position or being in an active status) effective the date of release of the applicable promotion selection board, promoting him to CPT with the appropriate date of rank, and paying him any associated back pay and allowances as a result of the corrections.

46.     On or about May 11, 2023, AHRC acknowledged the ABMCR's unanimous decision confirming:

> "By _law, regulation and policy_, his board file will appear _in accordance with the established MILPER message, by-laws, instructions_, and the directives of the

>ABCMR. 1 LT Hughes will be notified via his official email address no later than 28 August 2023. The entire process may take 12 or more months to complete before the results are approved for release by the appropriate signature authority. *If not recommended for promotion under the FY16 criteria the officer's records will go before the FY17 and FY18, CPT, APL, ARNGUS PSBs*." (emphasis added)

47. Plaintiff was notified of the ABCMR results on May 26, 2023.

48. Army Regulation 15-185 ("AR 15-185"), paragraph 2-13a(2), requires that an ABCMR decision is final when the ABCMR grants an application in whole or part without a hearing when (a) the relief is as recommended by a proper staff agency in an advisory opinion; and, (b) is unanimously agreed to by an ABCMR panel; and (3) does not involve an appointment or promotion requiring confirmation by the Senate.

49. Despite acknowledging Plaintiff's eligibility for consideration by the FY16, 17, 18 and 19 promotion boards, on January 29, 2024, AHRC informed Plaintiff that he was not selected for promotion on the FY16 promotion criteria, and Plaintiff's non-selection by the FY16 promotion board was a final adjudication of Plaintiff's case, and there was no appeal process.

50. Plaintiff's records were not, contrary to the ABCMR's directive and AHRC's acknowledgement that "*by law, regulation and policy, his board file will appear in accordance with the established MILPER message, by-laws, instructions* … *the officer's records will go before the FY17 and FY18, CPT, APL, ARNGUS PSBs*," forwarded for consideration pursuant to the eligibility criteria established for the FY17 and FY18 Captain promotion boards by the Secretary of the Army.

## V.    CLAIMS

### A.    Promotion to Officer Rank of Captain and Back Pay

51. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

52.     Army CID conducted a widely criticized investigation of more than 100,000 alleged perpetrators of fraud, of which Plaintiff was alleged to have been one.

53.     Army CID took more than 6 years to investigate Plaintiff's alleged false claims, false statements, and fraudulent receipt of $9,000 in recruiting bonuses and fees.  As a result of Army CID's 6-year incompetent investigation, improperly and illegally concluded that probable cause existed to believe Plaintiff committed crimes, titled and indexed Plaintiff, and created record and civilian "arrest record" that improperly prevented Plaintiff from being considered for and promoted to the rank of Captain for at least 5 years.

54.     Army CID did not admit and correct its mistake until December 2022, when it confirmed that "*an administrative error occurred in the application of the credible information standard*" of DoD Instruction 5505.07 in the initial titling of Plaintiff, and that the indexing information was being deleted from the title block of the ROI.

55.     Plaintiff's application to the ABCMR resulted in a unanimous decision that Plaintiff's record be considered for promotion by the FY16, 17, and 18 promotion selection boards.

56.     AHRC confirmed and accepted the ABCMR's decision that if Plaintiff was not recommended for promotion under the FY16 criteria, his officer's records would be considered under the criteria of the FY17 and FY18 Captain promotion selection boards.

57.     By Army CID's admission that an administrative error occurred in the application of the credible information standard at the outset of the investigation.  Therefore, Plaintiff should not have been removed from the FY15 Captain promotion scroll on March 24, 2015.  The ABCMR should have recommended and the Secretary of the Army should have directed pursuant to her authority Title 10 Authority (10 USC § 7013),  Plaintiff's retroactive promotion effective the first date of his eligibility for promotion in FY15.

58.     The promotion criteria for consideration and selection to the rank of Captain for the U.S. Army Reserve and the U.S. Army National Guard of the United States, as authorized by the Secretary of the Army remained unchanged in fiscal years 2015, 2016, 2017, 2018, and 2019, as evidenced in the MIPER message announcements of the promotion selection boards for those years.

59.     Despite being qualified for and selected for promotion in FY15 and FY19, and after purportedly not being qualified for promotion in FY16 (despite the identical criteria for the FY15, FY16, FYF17, FY18, and FY19 selection boards), AHRC arbitrarily and capriciously abused its discretion, without a compelling government interest or substantial evidence and incompetently failed to have Plaintiff's records considered by the FY17 and FY18 promotion selection boards.

60.     For the reasons set forth above, and contrary to Title 10 U.S.C. and Army Regulation, and solely due to Defendant's arbitrarily and capriciously acts, in an abuse of its discretion and without furthering a compelling government interest, Defendants' appointees, officers, employees, and agents prevented Plaintiff:

      a.      from being selected for promotion to Captain by the FY15 promotion selection board

      b.      from being selected for promotion to Captain by the FY16 promotion selection board

      c.      from being selected for promotion to Captain by the FY17 promotion selection board

      d.      from being selected for promotion to Captain by the FY18 promotion selection board

  e. from being selected for promotion to Captain by the FY19 promotion selection board

  f. from remaining an active member of the VT ARNG and being forced to prematurely retire and losing more than $1,000,000 in lifetime basic pay, benefits, and entitlements, and retired pay over the course of his natural life.

### B. Equal Access to Justice Act

61. Plaintiff incorporates the preceding paragraphs and allegations as if fully set forth herein.

62. Pursuant to Title 5, U.S.C. Section 504 (the "Equal Access to Justice Act"), should Plaintiff prevail in this case on at least one (1) cause of action or merit in this case that provides for material relief, Plaintiff demands attorney's fees incurred by Plaintiff in an amount to be decided by the Court in accordance with the Equal Access to Justice Act.

63. Plaintiff does not have a net worth exceeding $2,000,000.

## VI. REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court order as follows:

  a. that the Army to correct his records to remove all references to his alleged involvement in G-RAP fraud, including the DoD indexing and they NICS "arrest" record,

  b. that the Army promote Plaintiff to Captain pursuant to the FY15 Captain promotion selection board results,

  c. that the Army permit Plaintiff to return to his prior military status to allow Plaintiff the opportunity to continue his otherwise outstanding career, complete the necessary schooling, and to be eligible for promotion to higher ranks, and

      d.    that Plaintiff be awarded back pay, benefits, and entitlements for the period for which the Court deems appropriate.

Respectfully submitted,

MNB MERIDIAN LAW, LTD.

By: _____
Christopher Nuneviller, Esq.
Counsel to Plaintiff